NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2204

_____

TIAN MING LIU,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A99 321 110)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 14, 2010

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges

(filed: April 22, 2010)
_____

OPINION
_____

PER CURIAM

        Tian Ming Liu petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of an Immigration Judge's ("IJ") decision denying his

applications for relief from removal.  We will deny the petition for review.

Liu is a native and citizen of China. He came to the United States in March 2005 as a visitor. A notice to appear was issued in May 2006 charging that Liu was subject to removal because he remained here longer than authorized. Through counsel, Liu conceded that he is removable as charged. He applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Liu testified that he came to the United States because he participated in a protest in China on March 12, 2005. Liu explained that the company for which he worked could not pay its employees. Liu and approximately 100 to 200 employees went to the local government and protested. After 30 minutes, the police arrived to disperse the crowd. Liu, who was a trade union vice chairman and protest organizer, told the demonstrators to continue protesting. Liu eventually fled and hid at a relative's home. Liu's wife told him that the police wanted to arrest him.

Liu came to the United States ten days later. In August 2006, after he was placed in removal proceedings, Liu joined the China Democracy Party ("CDP"). Liu stated that he has participated in approximately 20 protests at the Chinese consulate in New York City and that he has published three articles on the internet criticizing the Chinese government. Liu believes that the Chinese government knows about his political activities here because consulate employees took his picture and his name was published in his articles. Liu further testified that he called his former co-workers and told them about the CDP. He stated that in August 2007 Chinese officials went to his home in China and warned his wife that he must stop his political activities.

On cross-examination, the Government pointed out that the statements that Liu had submitted from his wife and a co-worker contain three identical sentences. The Government also noted that Liu had applied for a visa to come here in 2004, before his protest activities, and that his application did not reflect his true employer. Liu also testified on cross-examination that he wanted to come here in 2004 because his work unit was not operating profitably and he wanted to learn if there was anything he could do to benefit himself and his company.

Liu also presented the testimony of Tang Yuan Jun, a founder of the CDP in China who was imprisoned there due to his political activities. Jun knows Liu from his participation in CDP activities in the United States. He testified that, if Liu returns to China, he would be persecuted due to his political activities.

The IJ concluded that Liu did not establish that he was at risk of persecution or that he has a well-founded fear of persecution based on his participation in the protest in China. The IJ explained that, aside from the protest, Liu was not politically active and he was never arrested or harmed. The IJ noted there was no evidence showing what Liu's punishment might have been for engaging in the protest. The IJ also questioned Liu's motive for coming to the United States, noting that his visa was issued six weeks before the protest. The IJ believed that Liu had an economic motive for leaving China.

The IJ found more serious Liu's asylum claim based on his political activities in the United States, which was supported by more detailed testimony and a witness. The IJ, however, concluded that Liu did not show that there is a pattern and practice of

3

persecuting citizens engaged in political activities overseas. The IJ found that news articles submitted by Liu were of questionable reliability and did not give a sense of the risk of persecution to a person who engaged in political activities overseas. The IJ acknowledged that people who publish on the internet may get in trouble when they return to China, but the IJ concluded that the evidence did not show that Liu had a well-founded fear of persecution on this basis. Finally, the IJ made an adverse credibility finding, relying on Liu's undetailed testimony, the similar letters from Liu's wife and co-worker, and the false employer reflected in his visa application.[1]

On appeal, the BIA found no clear error in the IJ's adverse credibility finding based on Liu's undetailed testimony, the letters purportedly written by his wife and co-worker in China, and the false information in his visa application. The BIA further found that, even if credible, the Chinese government never mistreated Liu and that any threat of arrest did not amount to past persecution. The BIA also agreed with the IJ that Liu did not establish a well-founded fear of persecution based on his participation in the 30-minute protest, noting that the evidence did not demonstrate that he would be persecuted on this basis if removed.

The BIA acknowledged that the Chinese government has persecuted CDP

---

[1] The IJ also believed that Liu engaged in his political activities in the United States in order to create an asylum case for himself. Although the IJ concluded that Liu is not eligible for asylum for this reason, the BIA did not agree with this conclusion or adopt the IJ's decision. Thus, the IJ's discussion of self-created asylum claims is not before us. See Voci v. Gonzales, 409 F.3d 607, 612 (3d Cir. 2005).

members, but stated that Liu had not shown a pattern or practice of persecution of all such members, particularly those who participated only in the United States. The BIA further stated that Liu had not shown that the Chinese government is aware of his party activities in the United States and that it was speculative to conclude that the government would target him because his picture was taken at protests here. The BIA also stated that Liu had not shown that the Chinese government is aware of the articles he wrote. Although Liu claimed that authorities had warned his wife that he needs to stop his political activities after he made telephone calls in support of the CDP, the BIA stated that Liu did not claim that authorities threatened to arrest him. The BIA also noted that Liu's asylum claim was undercut by the fact that his wife and children have lived in China without harm since he left. Finally, the BIA concluded that Liu did not meet his burden of proof for relief under the CAT. This petition for review followed.

We review the agency's findings under a substantial evidence standard, which requires that we uphold the agency's findings unless the evidence compels a contrary conclusion. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004).

In his brief, Liu challenges the BIA's adverse credibility finding and its alternative conclusions that, even if credible, Liu did not satisfy his burden of proof for asylum or withholding of removal. We need not address the adverse credibility finding because substantial evidence supports the BIA's conclusion that, even if credible, Liu did not satisfy his burden of proof.

Liu did not establish that he suffered past persecution in China. Liu was not

5

detained or harmed as a result of his participation in the 30-minute protest. Although Liu's wife attested that the police sought to arrest Liu after the protest, there is no evidence showing what happened to the other protest leaders or any other evidence indicating that an arrest would amount to persecution. See Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 2003) (recognizing persecution includes threats to life, confinement, torture, and severe economic restrictions constituting a threat to life or freedom). For similar reasons, Liu did not establish a well-founded fear of future persecution based on his participation in the protest.

Liu also did not establish a well-founded fear of persecution based on his CDP activities in the United States. Although Liu may have a subjective fear of persecution, there is little, if any, objective evidence supporting that persecution is a reasonable possibility. See Abdille v. Ashcroft, 242 F.3d 477, 496 (3d Cir. 2001) (requiring such evidence to establish a well-founded fear of persecution).[2] To support his claim, Liu submitted twelve articles, primarily from the internet. These materials consist of reproductions of criminal judgments and articles about criminal cases where individuals in China were convicted of subversion charges based on CDP political activity or the publishing of anti-government articles on the internet. Only one article addresses a

---

[2]The administrative record does not contain a United States Department of State Report reflecting country conditions in China. Liu quotes portions of such reports in his brief, but we may not consider them because our review is limited to the administrative record before the IJ and BIA. 8 U.S.C. § 1252(b)(4)(A). Although the Government often submits a copy of the report, Liu did not raise in the administrative proceedings, nor does he raise in his brief, any issue as to the absence of the report in the record.

situation where a person engaged in political activity while living abroad. This article reports that in 2002 a woman who joined the CDP in New York and returned to China for medical care was arrested and had been detained for twelve hours. A.R. at 380. We agree with the BIA that these articles do not establish a pattern and practice of persecution against CDP members, particularly those who engaged in political activity abroad. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (noting that a pattern and practice of persecution requires "systemic, pervasive, or organized" persecution).

The record also does not compel the conclusion that Liu has a well-founded fear of persecution based on his own political activities. Liu's wife's attested that two policemen went to their home in "early of 2007" and warned that the government had "found facts" that Liu participated in the CDP in the United States and published articles on the internet. A.R. at 233. She stated that the police told her to warn Liu to stop his activities and that, if he comes back, Liu must report to the police for an investigation as soon as possible. As noted by the BIA, the police did not threaten to harm or arrest Liu. In addition, Liu's wife's did not explain the basis of the policemen's knowledge and her statement that police came to their home in early 2007 conflicts with Liu's testimony that they came in August 2007. If police in fact went to their home in early 2007, they would not have known of at least two of Liu's internet articles, which were published in May and September of that year.[3]

---

[3] Liu does not argue in his brief that the testimony of his witness, Tang Jun, established that he has a well-founded fear of persecution. Although Jun gave his opinion that Liu

7

Liu also argues that he satisfied his burden of proof for protection under the CAT because he will be arrested as a political dissident and tortured. We disagree. Liu has not pointed to any evidence demonstrating that it is more likely than not that he would be arrested and tortured if removed to China. See 8 C.F.R. § 1208.16(c)(2) (setting forth applicant's burden of proof for withholding of removal under the CAT).

Accordingly, we will deny the petition for review.

---

would be persecuted if removed to China, his testimony appears to have been offered to corroborate Liu's CDP activities. He did not provide an expert opinion.